```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

INTERNATIONAL ASSOCIATION OF
HEAT AND FROST INSULATORS AND
ALLIED WORKERS LOCAL UNION NO.
12A and TRUSTEES OF THE ASBESTOS
WORKERS LOCAL 12A HEALTH AND
ANNUITY FUNDS,

                Plaintiffs,

     -v-                                              No. 15-CV-6909-LTS

AFFILIATED ENVIRONMENTAL
SERVICES NJ, INC.,

                Defendant.

-------------------------------------------------------x
```

MEMORANDUM OPINION AND ORDER

Plaintiffs International Association of Heat and Frost Insulators ("IAHFI"), Allied Workers Local Union No. 12A ("Local Union No. 12A"), and Trustees of the Asbestos Workers Local 12A Health and Annuity Funds (the "Funds" and, collectively, "Plaintiffs"), bring this civil action pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132 and 1145; and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, against Defendant Affiliated Environmental Service NJ, Inc. ("Defendant" or "AES") for injunctive and other equitable relief, breach of contract, and violations of the relevant trust agreements, collective bargaining agreement, ERISA and/or the LMRA. Defendant has not appeared in the above-captioned action.

The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185(a).

Plaintiffs now move, pursuant to Federal Rule of Civil Procedure 55(b)(2), for a default judgment against Defendant. Specifically, Plaintiffs seek judgment against the Defendant for violations of Section 515 of ERISA and Section 301 of the LMRA, and an award totaling $172,073.60, for:

- The period of January 1, 2013, through December 31, 2013: fringe benefit contributions in the amount of $40,627.40; contractual union dues in the amount of $10,035.00; prejudgment interest in the amount of $6,622.35; contractual audit costs in the amount of $1,477.00; and liquidated damages in the amount of $6,622.35, as agreed to in the applicable Collective Bargaining Agreement/Trade Agreement (the "Agreement");

- The period of December 29, 2013, through December 31, 2014: fringe benefit contributions in the amount of $66,261.40; contractual union dues in the amount of $16,986.00; prejudgment interest in the amount of $6,777.93; contractual audit costs in the amount of $5,218.00; and liquidated damages in the amount of $6,777.93, as agreed to in the Agreement; and

- Attorneys' fees in the total amount of $4,062.50 are sought pursuant to 29 U.S.C. § 1132(g). Plaintiffs also seek costs and disbursements of this action in the amount of $605.74.

The Court has considered the parties' submissions carefully. For the following reasons, Plaintiff's motion, which is unopposed, is granted.

BACKGROUND[1]

Plaintiffs IAHFI and Local Union No. 12A (collectively, the "Union") are labor organizations under Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185. (Compl. ¶ 5.) The Union represents and bargains on behalf of workers who perform hazardous waste removal work

---

[1] The facts recited herein are drawn from Plaintiffs' Complaint ("Compl.," Docket Entry No. 6), and submissions in connection with this motion practice. In light of Defendant's default, Plaintiffs' well-pleaded factual allegations are deemed admitted for purposes of this motion practice. See Fed. R. Civ. P. 8(b)(6); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability.").

in New York City and Long Island. (See Devasia Aff. In Support of Motion for Default Judgment ("First Devasia Aff."), Docket Entry No. 31, ¶¶ 7, 9; see also Pls. Br. in Support of Motion for Default Judgment ("Pls. Br."), Docket Entry No. 33, at 1-2 (citations omitted).) Plaintiff Funds are "fiduciaries . . . of employee welfare benefit plans and employee pension benefit plans as defined in" the relevant sections of ERISA that are "established and maintained jointly by employers and by a labor organization representing employees in an industry affecting commerce, and . . . qualify as multi-employer plans within the meaning of" ERISA. (Compl. ¶ 6.) The Funds "provide various fringe benefits to eligible employees on whose behalf a defendant-employer contributes to the [Funds] pursuant to the [relevant] collective bargaining agreement . . . between the [Union] and the employer." (Id. ¶ 7.) At all relevant times, Defendant AES "is and was, at all relevant times, engaged in an industry affecting commerce and is an 'employer' within the meanings of" Sections 3(5) and 515 of ERISA and Section 301 of the Taft-Hartley Act. (Id. ¶ 9.)

At all relevant times, Defendant was a signatory to a collective bargaining agreement with the Union, obligating Defendant "to employ members of [the Union] within the trade and geographical jurisdiction of the Union" and "to pay and/or submit the required monetary contributions and/or reports to the [Funds] and remit dues checkoffs deducted from the wages [of] paid employees who authorize said deductions in writing to the [Union] for all work performed by [D]efendant's employees within the trade and geographical jurisdictions of the [Union]." (See Pls. Br., at 2; Compl. ¶ 10.) Employees of the Defendant, "who are and/or were participants in the [Funds], performed work governed by the [Agreement] on behalf of [D]efendant for the period [of] January 1, 2013 to present[,]" and, "[a]s a result, [D]efendant was obligated to make fringe benefit contributions to the [Funds] on behalf of these employees."

(Compl. ¶ 14.) Plaintiffs allege that Defendant failed to fully fulfill those obligations during the relevant periods.

The relevant collective bargaining agreements and trust indentures "require . . . that an employer submit its books and records for inspection and audit to the [Funds'] Auditors, Accountants, or other representatives of the [Funds] in order to confirm that fringe benefit contributions and union dues owed to [Plaintiffs] are paid in full." (Id. ¶¶ 13, 25; see also Exhibit D, First Devasia Aff., Article VIII, Section 12.) Plaintiffs allege that the Funds' designated auditor "attempted to conduct an audit of Defendant's books and records . . . to confirm that all fringe benefit contributions and union dues [had] been paid in full," for the period of January 1, 2013, through December 31, 2013. (See Pls. Br., at 3; see also Compl. ¶¶ 27, 51.) A partial audit of Defendant's books and records for this period revealed that Defendant was delinquent in the payment of $52,666.40 in fringe benefit contributions and $12,996.00 in union dues. (See Compl. ¶¶ 27-30, 51-52; Exhibit E, First Devasia Aff.) After the audit was presented to the Defendant on or about September 11, 2014, Defendant made two payments totaling $15,000 towards the $65,662.40 debt for 2013 period. (See First Devasia Aff. ¶¶ 12-13.) Plaintiffs further allege that a second audit "confirmed [D]efendant was delinquent in its payment of" $66,261.40 in fringe benefit contributions and $16,986.00 in union dues for the period of December 29, 2013, through December 31, 2014. (Id. ¶¶ 11, 15 (citing First Devasia Aff., Exhibit E).) This second audit was presented to Defendant on or about April 15, 2015, and Plaintiffs do not allege Defendant has made any payment towards these delinquent funds to date. (See id. ¶ 12.)

The Agreement provides that, if an "[e]mployer is found to be delinquent in the payment of fringe benefit contributions . . . then the [e]mployer shall pay, in addition to the

delinquent fringe benefit contributions, interest on the unpaid amounts from the date due until the date of payment at the rate prescribed under section 6621 of Title 26 of the United States Code," and in the event a litigation is brought "to recover the interest on delinquent fringe benefit contributions," and Fringe Benefit Funds prevail, "the [e]mployer shall be obligated to pay the reasonable costs and attorneys' fees incurred in bringing said action." (Exhibit D, First Devasia Aff., Article VIII, Section 12(f).)

On September 1, 2015, Plaintiffs initiated this action, seeking injunctive and other equitable relief for breach of contract and violations of the respective trust agreement, collective bargaining agreement, ERISA and/or the LMRA. (See Docket Entry Nos. 1, 6.) Specifically, Plaintiffs seek a default judgment against the Defendant for violations of Section 515 of ERISA and Section 301 of the LMRA, including an award totaling $172,073.60, for:

- The period of January 1, 2013, through December 31, 2013: fringe benefit contributions in the amount of $40,627.40; contractual union dues in the amount of $10,035.00; prejudgment interest in the amount of $6,622.35; contractual audit costs in the amount of $1,477.00; and liquidated damages in the amount of $6,622.35, as agreed to in the Agreement;

- The period of December 29, 2013, through December 31, 2014: fringe benefit contributions in the amount of $66,261.40; contractual union dues in the amount of $16,986.00; prejudgment interest in the amount of $6,777.93; contractual audit costs in the amount of $5,218.00; and liquidated damages in the amount of $6,777.93, as agreed to in the Agreement; and

- Attorneys' fees in the total amount of $4,062.50 pursuant to 29 U.S.C. § 1132(g). Plaintiffs also seek costs and disbursements of this action in the amount of $605.74.

In support of their motion, Plaintiffs proffer two affidavits annexing multiple exhibits, including the Agreement, audit reports for the relevant periods, a statement of damages, the relevant Declaration and Agreements of Trust, and invoices substantiating their claim for attorneys' fees and costs. (See First Devasia Aff. and Supplemental Affidavit in Support of Default Judgment

("Supp. Devasia Aff."), Docket Entry No. 34.) Defendant has not appeared in this action nor interposed any opposition to the instant motion.

## DISCUSSION

Default Judgment Standard

In determining whether to grant a motion for default judgment, courts within this district first consider three factors: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Indymac Bank, F.S.B. v. National Settlement Agency, Inc., 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (internal citation omitted); see also Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013) (applying these factors in review of lower court's grant of a default judgment).

The Court finds that all three of the foregoing factors weigh in Plaintiffs' favor. First, the Defendant's failure to make an appearance and failure to respond to either Plaintiffs' Complaint or their Motion for Default Judgment are indicative of willful conduct. See Indymac Bank, F.S.B., 2007 WL 4468652, at *1 (holding that non-appearance and failure to respond to a complaint or motion for default judgment indicate willful conduct). With respect to the second factor, because Defendant has failed to make any appearance, there is no information before the Court regarding any meritorious defense to Plaintiffs' claims that Defendant may have. Finally, the Court finds that, in light of the considerable amount of time that has elapsed since Plaintiffs filed the Complaint, Plaintiffs will be prejudiced if they are denied the ability to seek judgment by default.

Once the Court finds that these factors favor the plaintiffs, it must determine whether the plaintiffs have pleaded facts supported by evidence sufficient to establish the defendant's liability with respect to each cause of action. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability" except those relating to damages. Greyhound Exhibitgroup, 973 F.2d at 158. Thus, "[w]ithout a response from [the defendant, a] court must first determine whether the allegations in Plaintiff[s'] complaint are sufficiently pleaded to establish [the defendant's] liability." Lenard v. Design Studio, 889 F. Supp. 2d 518, 528 (S.D.N.Y. 2012) (citation omitted).

For the following reasons, the Court finds that Plaintiffs have pleaded facts supported by evidence sufficient to establish Defendant's liability with respect to its failure to make required fringe benefit contributions and union dues, in violation of Section 515 of ERISA and Section 301 of the LMRA, for (1) the period of January 1, 2013, through December 31, 2013, and (2) the period of December 29, 2013, through December 31, 2014.

Liability

In Plaintiffs' Third and Eighth Causes of Action (the "ERISA Claims"), they allege Defendant is liable under Section 515 of ERISA for failure to make the required monetary contributions. Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions . . . under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C.S. § 1145 (LexisNexis 2011). In their Sixth and Eleventh Causes of Action (the "LMRA Claims"), Plaintiffs allege Defendant is liable under

Section 301 of the LMRA for failure to make the required monetary contributions as set forth in the Agreement.  Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties. . ." 29 U.S.C.S. § 185(a) (LexisNexis2013).  Plaintiffs have moved for default judgment and a finding of liability as to the ERISA and LMRA Claims.

Here, Plaintiffs have pleaded facts supported by evidence sufficient to establish Defendant's liability with respect to the ERISA and LMRA Claims.  Plaintiffs have sufficiently pleaded that, at all relevant times, Defendant was "obligated to make contributions," including fringe benefit contributions and union dues, in accordance with the terms of the Agreement it executed with the Union, and that they have failed to fulfill these obligations for the periods of January 1, 2013, through December 31, 2013, and December 29, 2013, through December 31, 2014.  (See Compl. ¶¶ 11, 14-15, 27-30, 34, 50-52, 66, 83-84; see also Exhibit D, First Devasia Aff., Article VIII, Section 12.)  In support of these well-pleaded allegations, Plaintiffs proffer the applicable Agreement and records of audits conducted for the two time periods at issue that identify Defendant's delinquency and delineate the amounts.  (See Exhibits D and E, First Devasia Aff.)  Plaintiffs have proffered uncontroverted evidence of Defendant's failure to remit (1) $52,666.40 of fringe benefit contributions and $12,996.00 of union dues for the period of January 1, 2013, through December 31, 2013, and (2) $66,261.40 of fringe benefit contributions and $16,986.00 of union dues for the period of December 29, 2013, through December 31, 2014. (See Exhibit E, First Devasia Aff.)  Plaintiffs have also proffered uncontroverted evidence that, after being presented with the findings of the audit for the period of January 1, 2013, through December 31, 2013, Defendant made a partial payment of $15,000 prior to the commencement

of this action, and thus $40,627.40 in fringe benefit contributions and $10,035.00 in union dues remain unpaid. (See First Devasia Aff. ¶¶ 13-14.) Thus, Plaintiffs have pleaded facts supported by evidence sufficient to establish Defendant's liability under Sections 502 and 515 of ERISA. Plaintiffs have also pleaded facts supported by evidence that Defendant violated the Agreement with the Union with respect to the LMRA Claims.

Calculation of Award

Plaintiffs seek a total award of $172,073.60, comprised of the outstanding fringe benefit contributions and union dues, audit costs, liquidated damages, attorneys' fees, and costs and disbursements. Once an employer is found to have violated Section 515, that "employer is liable for damages under ERISA § 502(g)(2)." Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. Vintage Tile & Flooring, Inc., No. 14-CV-06450-KBF, 2015 WL 3797273, at *2 (S.D.N.Y. June 18, 2015) (citing 29 U.S.C. § 1132(g)(2)). Section 502(g)(2) of ERISA provides that when a judgment is entered in favor of plaintiffs seeking to enforce 29 U.S.C. § 1145, a court "shall award" them:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C.S. § 1132(g)(2) (LexisNexis 2011). Though "a party's default is considered a concession of all well pleaded allegations of liability, it is not considered an admission of damages" and "'[t]here must be an evidentiary basis for the damages sought.'" Trustees of the Sheet Metal Workers' Int'l Ass'n Local Union No. 28 Benefit Funds v. J. & A. Contractors Corp., No-14-CV-4935-KBF, 2014 WL 4733504, at *2 (S.D.N.Y. Sept. 4, 2014) (citing and quoting Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012)).

While courts will often conduct an inquest hearing to determine the appropriate award, such a hearing is not required, and courts have awarded damages by "rel[ying] solely on the papers provided by plaintiff[s]." See id. (citing Metro Found. Contractors, Inc., 699 F.3d at 234). The Court finds that an inquest hearing is not necessary here, as the appropriate award can be determined based on the papers proffered by Plaintiffs.

*Delinquent Benefit Contributions and Union Dues*

Plaintiffs have proffered uncontroverted documentation, including audit reports of Defendant's books and records, detailing the $40,627.40 in fringe benefit contributions and $10,035 in union dues owed for the period of January 1, 2013, through December 31, 2013, and the $66,261.40 of fringe benefit contributions and $16,986.00 of union dues owed for the period of December 29, 2013 through December 31, 2014. (See Exhibit E, First Devasia Aff.) The Court grants Plaintiffs' request for an award of delinquent benefit contributions and union dues in the amount of $133,909.80.

*Interest*

Plaintiffs seek $6,622.35 in prejudgment interest for the period of January 1, 2013, through December 31, 2013, and $6,777.93 in prejudgment interest for the period of

December 29, 2013, through December 31, 2014.  Under the Agreement, Defendant must "pay, in addition to the delinquent fringe benefit contributions, interest on the unpaid amounts from the date due until the date of payment at the rate prescribed under [26 U.S.C. § 6621]."  (Exhibit D, First Devasia Aff., Article VIII, Section 12(f).)  With respect to Plaintiffs' claim for unpaid union dues, "[a]n award of prejudgment interest in a [S]ection 301 [of the LMRA] action is within the discretion of the trial judge."  See Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1161 (2d Cir. 1994) (citation omitted).  The Court finds Plaintiffs are entitled to prejudgment interest for not only the delinquent fringe benefit contributions, as provided for in Section 502(g)(2) and the Agreement, but also for the union dues, pursuant to LMRA Section 301.  See id.  Plaintiffs, however, have not sufficiently proffered a basis for how the $6,622.35 and $6,777.93 figures were calculated.  Plaintiffs are ordered to file an affidavit specifying the amounts of prejudgment interest they seek as well as the basis for their calculation within twenty-one (21) days of the date of this Memorandum Opinion and Order.

*Liquidated Damages*

Plaintiffs seek liquidated damages of $6,622.35 for the period of January 1, 2013, through December 31, 2013, and $6,777.93 for the period of December 29, 2013, through December 31, 2014.  Plaintiffs contend that their proffered prejudgment interest determinations for the two periods at issue are greater than 20 percent of the amount of unpaid contributions discussed above, and, thus, they request this Court award as liquidated damages the amount of the prejudgment interest determinations, pursuant to Section 502(g)(2)(C) of ERISA.  As noted above, Plaintiffs have not sufficiently proffered a basis for how the $6,622.35 and $6,777.93 prejudgment interest figures were calculated.  Plaintiffs are ordered to file an affidavit specifying

the amounts of liquidated damages they seek as well as the basis for their calculation within twenty-one (21) days of the date of this Memorandum Opinion and Order.

*Contractual Audit Costs*

Plaintiffs seek to recover the cost of conducting the two audits at issue: $1,477 for the period of January 1, 2013, through December 31, 2013, and $5,218 for the period of December 29, 2013, through December 31, 2014. (See Exhibit F, First Devasia Aff.) Under ERISA Section 502(g)(2)(E), courts are authorized to award "such other legal or equitable relief as the court deems appropriate," and "[c]ourts routinely hold that audit fees are recoverable under this provision of ERISA." See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Local 15, 15A, 15C & 15D, AFL-CIO v. Eastport Excavation & Utilities Inc., 3 F. Supp. 3d 204, 220 (S.D.N.Y. 2014) (citations omitted). Plaintiffs' requested contractual audit costs "are in line with amounts awarded in other cases." See id. Plaintiffs' request for an award of $1,477 and $5,218 in contractual audit costs is granted.

*Attorneys' Fees and Costs*

Plaintiffs seek to recover attorneys' fees in the amount of $4,062.50 for all periods and costs and disbursements of this action in the amount of $605.74. Under Section 502(g)(2)(D) of ERISA, courts are authorized to award "reasonable attorney's fees and costs of the action." Defendant here also agreed in the Agreement to pay reasonable attorneys' fees and costs in the event Plaintiffs prevailed in a litigation to enforce the Agreement. (See Exhibit D, First Devasia Aff., Article VIII, Section 12(f).)

"A district court has 'considerable discretion' in determining what constitutes a reasonable fee award," which "should be based on a 'reasonable hourly rate,'" or "'the rate a

paying client would be willing to pay,' as determined based on a holistic assessment of all of the circumstances at issue in the case." Vintage Tile & Flooring, Inc., 2015 WL 3797273, at *6 (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 190 (2d Cir.2008)). A "reasonable hourly rate" should also correspond with the prevailing rates "'in the community for similar services by lawyers of reasonably comparable skill expertise and reputation.'" Id. (quoting McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension Tr. Fund, 450 F.3d 91, 96 (2d Cir.2006)). Attorneys' fees applications generally must include "'contemporaneous time records' that 'specify, for each attorney, the date, the hours expended, and the nature of the work done.'" Id. (quoting N.Y. State Ass'n for Retarded Children. Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir.1983)).

In support of Plaintiffs' application, they proffer contemporaneous time records that specify the date, hours expended, and nature of the work done for each attorney who has prosecuted this action. (See Exhibit I, Supp. Devasia Aff.) The $250 hourly rate is reasonable in light of other attorneys' fee awards in ERISA actions granted in this district. See Eastport Excavation & Utilities Inc., F. Supp. 3d at 218-22 (granting attorneys' fees application based on a $325/hour rate). The Court has reviewed carefully the Plaintiffs' proffered contemporaneous time records and finds Plaintiffs' request, including the hours expended and nature of the work done, is reasonable, and is adequately supported by documentation. Plaintiffs also proffer evidence in support of their request for costs of the prosecution of this action, including disbursements for Federal Express shipments, court fees, and process server fees. (See Exhibit I, Supp. Devasia Aff.) The Court finds this request reasonable. Accordingly, the Court awards Plaintiffs $4,062.50 in attorneys' fees and $605.74 in costs.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a default judgment as to the Third, Sixth, Eighth, and Eleventh Causes of Action is granted and Defendant is liable for violations of ERISA and the relevant Agreement in violation of the LMRA. Plaintiffs are hereby awarded $145,273.04 for the delinquent fringe benefit contributions and union dues, contractual audit costs, and attorneys' fees and costs.

Plaintiffs must file a further supplemental affidavit specifying the basis for their calculations of prejudgment interest and liquidated damages by **November 27, 2017**, twenty-one (21) days from the date of this Memorandum Opinion and Order.

Plaintiffs must also file a proposed final judgment, consistent with this Memorandum Opinion and Order, for the Court's consideration by **November 27, 2017**, twenty-one (21) days from the date of this Memorandum Opinion and Order.

This Memorandum Opinion and Order resolves Docket Entry No. 30.

SO ORDERED.

Dated: New York, New York
November 6, 2017

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge